21-2966. Good morning. Good morning. Thank you, Your Honor, and may it please the Court. The government obtained Mr. Williams' plea by promising to drop a witness tampering charge. The plea agreement explained that the government would not pursue that charge, but may nevertheless use the conduct underlying it in two ways, to justify a guidelines enhancement and as a predicate act in a subsequent prosecution. But unlike... Why is it that you believe the government would do that it didn't do? The government was committed to do that it failed. So the government promised that they would drop the charge in paragraph 5 and then outlined how they could still... They did. And they outlined how they could still use the conduct notwithstanding the dropped charge. And they exceeded how they outlined using that conduct. So if we look at paragraph 5 of the plea agreement, which is on page, I believe, 16 of the joint appendix, that paragraph says that the government will drop the charge, but may still use the conduct underlying the charge either to justify a guidelines enhancement or a predicate act in subsequent prosecution. If we look at paragraph 2 of the plea agreement, which is then on page 14, they identify the specific guidelines enhancement that they're seeking, which is a two-level enhancement. So the government explained that it was dropping the charge and then outlined the scope of its permitted advocacy notwithstanding doing that. And conspicuously omitted from that is the right to seek an above-guideline sentence based on the dropped charge. So that's where we really feel that the government exceeded how they conveyed to Mr. Williams that the witness tampering charge conduct would still impact his sentencing on the arson charge. And critically here, the agreement does not need to unambiguously prohibit what the government did. It really needs to unambiguously permit the government to do what it did because any... Well, paragraph 2 covered a lot of ground, didn't it? It said, you know, it's not binding on the office. It's not binding on the court. I mean, the guidelines, that's what I'm talking about. If one is, for any reason, there's an error in the estimations, it's different and so forth, he's still bound. Your Honor, I think, so I believe that's paragraph 3, which is a very important paragraph, I think, to look at here because paragraph 3 has two sentences. It says the guideline estimate is not binding on the office and then, after that, explains how it's not binding and that the government can calculate a different guideline calculation. So the two sentences together really shape the defendant's reasonable expectations about what it means for the estimate not to be binding. The paragraph also says that the estimate of the guidelines is not binding. It doesn't actually address the actual applicable guidelines that the government seeks and that the court adopts at the time of the sentencing. So it is true that the right to ask for a different... It said, it said, if the guideline offense level advocated by the office or the court is, for any reason, including an error in estimation, different, then he's not bound. Yes, and the government could certainly have come in and offered a different calculation of the guideline. That's not actually the argument that the government made here. The guidelines were still, and which included an enhancement to account for the witness tampering conduct, were still insufficient to properly, quote, account for the conduct underlying the dropped charge. This agreement is all about the guidelines, right? It's all about, here's how we stipulate that the guidelines are going to be calculated or should be calculated. Footnote, here's a whole bunch of reasons why that stipulation isn't binding. But it's all about what the guidelines can be varied from or departed from or who can advocate for up or down. There's no indication that the defendant can argue for a below guidelines sentence, right? But he could. Your Honor, actually, he could not because the bottom of the guidelines in this case was the mandatory minimum. So that wasn't actually possible. But I think if you look at paragraph 5, paragraph 5 is not simply about the guidelines. Paragraph 5, which is on page 16 of the joint appendix, is not, is about what it means for the government to drop this charge. They outline this benefit, which is a central benefit of the plea agreement, and then they talk about permitted uses of the conduct. But he got that benefit. They dropped the charge. They dropped the charge, but then they used the conduct underlying the dropped charge in a broader way than described in the plea agreement. But they could not do what they could have done if the charge stayed, which is advocate for a consecutive sentence on an additional charge with a higher maximum sentence. And he gets that benefit. Well, he gets a benefit, but he does not get the full benefit that's promised in the plea agreement. Where is it promised? I mean, I just, I mean, I sort of start from a rather different place maybe. I would think that both the government and the defendant can make any argument whatsoever to the court about sentencing unless they've agreed not to. So, I think the question here is whether this unambiguously permits. And I think- I mean, do you want your plea back? Is that the problem? That he didn't really understand what he was getting and not getting? So just to address that point specifically, I think there are two possibilities if the government, if the court were to find that the government breached the plea agreement. And Mr. Williams is not seeking to withdraw his plea. He is only seeking a resentencing with specific performance of the plea agreement. So I do just want to be clear about what- If you understand what the promises really are and aren't, then, you know, we start over. It's not so much that you get to get the benefit of whatever your client thinks the plea meant. Our argument here is not based on a subjective mistake. Our argument here is based on looking at paragraph 5 and paragraph 5's description of what the government's permitted use is of the conduct underlying the drop charge, notwithstanding the drop charge, and the use here conflicting with that. Why is it that on plain error, we review it for whether the agreement unambiguously permits X, Y, or Z, as opposed to unambiguously prohibits? Well, so any ambiguity is always construed in favor of the defendant, and that's because the government- But we're on plain error. Yes. So the ambiguity must itself be obvious, which we believe in this case it is. I'm sorry, I see my time is running out. Is it possible for me to reserve the remainder for rebuttal? Of course. Thank you. You reserved two minutes for rebuttal, so we'll give it to the government. May it please the court. My name is Sophia Suarez, and I'm an assistant United States attorney with the Eastern District of New York. The court should reject the appellant's request because he does not and cannot point to a single case establishing or even suggesting that the law in this circuit requires the government to expressly reserve the right to take a certain position at sentencing or otherwise breach the agreement. That's because the law, as announced in United States v. Miller, is that, and I'll read from the opinion at page 20, we see no implication in a plea bargain silence as to what position the government will take that the government has promised to take any specific position. And further down, the court concludes, without a stipulation as to what position the government will take, the agreement is not ambiguous, but, and this is a quote, simply leaves the government free to take the position of its choice. In light of Miller, any error here, and the government does not concede that there was one, is not plain. And unless there are any further questions from your honors, the government will yield its time and rely on the papers. Let me just be sure I'm clear. The government's position, what benefit did he get from this plea agreement? Yes, your honor. The defendant received several benefits from entering into this plea agreement, one of which was he received three points for acceptance of responsibility, one of which was based on the government's motion. And he could have found himself at a sentencing arguing for a significant downward departure, given that he sought the mandatory minimum of 60. Without the three points, I think he would have been facing 78 to 90, 78 to 97 months had he gone to trial and not received those points. And so he would have been arguing for a downward departure of 60 months from the 78 months, which puts him in a very different position than a guidelines estimate that includes the acceptance of responsibility points and puts what he wanted, the mandatory minimum, within that range. In addition, your honor, the government could have sought consecutive sentences, as Judge Lynch pointed out during the appellant's argument, and that would have been a different penalty scheme that he would have been facing, a different sentence that he would have been facing had he not entered into the plea agreement. Before you sit down, let me just ask you something that I didn't get out of the record, but I am real curious about anyway. Did this defendant, there's nothing in there about the background of this case. Did this defendant know R. Kelly? What was going on? Your honor, I admittedly was not one of the AUSAs that prosecuted the case. I'm here for the first time on the appeal, so I'm less familiar with the record. From my understanding of the record, there appeared to be, if not a direct association, perhaps an indirect association through a relative or a mutual friend. But I don't want to misstate the record, but that was my understanding. But there is this assertion from the defendant that it was his cousin who got him into this. Correct, your honor. There was also this evidence that the government offered that Mr. Williams himself had engaged in some internet research into accusers of R. Kelly and what could happen if you obstructed justice. Including what the federal statutory scheme for witness tampering was, correct, your honor? That's why we're here. And that's why we're here. That's why we're here in the Eastern District of New York rather than in Georgia where the defendant lived or Florida where he traveled to engage in the offense conduct. And the waiver of venue in the plea agreement. Yes. Thank you very much. Thank you, your honors. Thank you, your honors. I just, I'd ask that you take a look at the Padilla decision, which also does not have a sentence in that decision that says the government cannot do the thing that the government did. What it had was an outline of things the government could do if in that case the defendant committed future criminal conduct and conspicuously omitted from the list of things the government could do was file a motion to withdraw a 5K1.1 letter. So there is the same concept of a conspicuous omission in that. On the subject of plain error, it is rather striking that the lawyer who negotiated this agreement did not seem to think or did not act as if he thought that the government was doing something. And that is not just a question of a technical forfeiture. It always seems to me that has some bearing on trying to understand what the parties thought they were doing. I mean if I negotiated an agreement that I thought meant that my client had secured the government's agreement not to seek an upward departure and the government then does exactly that at sentencing, I'd be on my feet, right? So Your Honor, I also was not trial counsel in this case so I can't speak as directly to that. But I do think it does worry me that the government has suggested that a failure to object itself could satisfy reasonable expectations because I think the Puckett decision is quite clear that there is plain error review for this. And also I think we do know as a practical matter that trial attorneys can, defendants can fail to raise objections that are in fact completely meritorious. And so we do need this precaution. If we were to say that, you know, the government's warning in advance can always insulate from plain error review, we could get into worrisome situations. Plain error review doesn't mean that we're supine, that we do nothing. There's still review. But I'm not sure that I got an answer to my question about testing your view that it has to be unambiguously permissible. So I do think that if there is ambiguity and if the ambiguity is plain from the face of the agreement, that there is a plain error there because all ambiguities must be construed in favor of the defendant. That is our position and I think that is what this case law clearly  Thank you very much. Thank you. Very helpful. We'll reserve the decision.